**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| **CAPTAIN CONNIE RHODES, M.D.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 4:09-CV-106 (CDL)** |
| ) | |
| **COLONEL THOMAS D. MACDONALD**) | |
| **et al.** ) | |
| **Defendants.** ) | |
| ) | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DAMAGES,**
**DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF**

COMES NOW Defendants, by and through counsel, the United States Attorney for the

Middle District of Georgia, and respectfully submit their Motion to Dismiss the Complaint and

the accompanying Application for Temporary Restraining Order and Preliminary Injunction

submitted by Plaintiff, Captain Connie Rhodes. In support of this submission, we rely upon

Plaintiff's Complaint, her Application for a Temporary Restraining Order and Preliminary

Injunction, the following brief, and its attached exhibit.[1]

## I. NATURE OF THE CASE

Captain Connie Rhodes, M.D. is an active duty Army officer assigned to Fort Riley,

Kansas. She is a medical doctor currently serving as a Flight Surgeon at Fort Riley. On August

25, 2009, the Army issued orders for Captain Rhodes to report to Fort Benning, Georgia on

September 12, 2009, for deployment with the 501st Medical Company to Iraq. DEX A.

---

[1]Citations in this brief Plaintiff's Complaint are denoted as "Pl. Compl. ___." Citations
to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction are denoted
as "Pl. TRO App. __." Citations to Defendant's Exhibit in support of this Motion to Dismiss are
denoted as "DEX ___."

Captain Rhodes comes before this Court seeking a temporary restraining order and preliminary injunction to prevent her deployment to Iraq, claiming that the President's legitimacy is "open to serious question" and compliance with her orders would constitute "involuntary servitude or judicially sanctioned rape of her individual autonomy." Pl. TRO App. at 8. Captain Rhodes previously filed an application for a temporary restraining order in the U.S. District Court for the Western District of Texas, challenging these deployment orders, also citing reservations regarding the legitimacy of President Barack Obama as the Commander-in-Chief. Rhodes v. Gates, et al., (No. 09-cv-703, August 28, 2009). On August 28, 2009, the Western District of Texas court denied Captain Rhodes' application for a temporary restraining order, finding that she had no likelihood of success on the merits, there was no irreparable injury that she would suffer from compliance with her orders, and she failed to demonstrate that the issuance of a temporary restraining order would serve the public interest. Id.

As in her previous case in the Western District of Texas, Captain Rhodes fails to meet her burden for obtaining injunctive relief. First, she has no likelihood of success on the merits. The United States District Court for the Western District of Texas has already ruled on the transactional facts that Captain Rhodes seeks to re-litigate here. Therefore, she is barred from bringing this cause of action anew in this Court. Moreover, even if her claim were not barred by *res judicata* and collateral estoppel, her claims are nevertheless barred because they are nonreviewable under the political question doctrine and would require review by this Court of nonjusticiable military decisions. Given these impediments to Captain Rhodes' claims, her request for injunctive relief should be denied, and her complaint should be dismissed.

Even assuming, *arguendo*, that the Court were to find that Captain Rhodes claims were

not barred, she does not meet the standard for injunctive relief. Captain Rhodes has failed to demonstrate that she will suffer irreparable harm from complying with her deployment orders. Captain Rhodes maintains that she has no objection to military service–only military service in Iraq. Captain Rhodes, as with every other service member in today's military, voluntarily entered military service with full knowledge that she may be required to deploy overseas. As such, she cannot demonstrate that service in Iraq, as opposed to service at Fort Riley, subjects her to irreparable harm. Moreover, the harm to the Army from the precedential effect of such an injunction far outweighs any speculative injury Captain Rhodes may suffer. Finally, the public interest does not lie with excusing Captain Rhodes from her obligation to comply with her orders. As such, her request for a temporary restraining order and preliminary injunction should be denied.

## II. ARGUMENT

### A.    Standards of Review

####     1.    Motion To Dismiss For Lack Of Jurisdiction

A proper basis for a motion to dismiss is when the court lacks jurisdiction over the subject matter. See Fed. R. Civ. P. 12(b)(1). Unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited; conflicting written and oral evidence may be considered and a court may "decide for itself the factual issues which determine jurisdiction." Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981). See also Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990), Scarfo v. Ginsberg, 175 F.3d 957, 960-961 (11th Cir 1999) (11th Circuit adopts Williamson, Id., rationale for viewing motions to dismiss based on Rule12(b)(1)).

2.     **Motion to Dismiss for Failure to State a Claim**

In ruling on a motion to dismiss for failure to state a claim, the Court "must constru[e] the [claim] in the light most favorable to the [party asserting the claim] and accept[ ] as true all facts which [that party] alleges." Day v. Taylor, 400 F.3d 1272, 1275 (11th Cir. 2005). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (brackets added; citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., citing Twombly, 550 U.S. at 556. Hence, while the complaint need not set out "detailed factual allegations," Twombly, 550 U.S. at 555, it must provide sufficient factual amplification "to raise a right to relief above the speculative level." Id.

In addition to considering the properly-pleaded allegations of the complaint, the court can consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, ----, 127 S. Ct. 2499, 2509 (2007). Public records comprise a category of documents subject to judicial notice. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999). Moreover, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim,

then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6)

dismissal[.]" <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997)

(per curiam).  And "the defendant's attaching such documents to the motion to dismiss will not

require conversion of the motion into a motion for summary judgment."  <u>Id</u>.  The court's "duty to

accept the facts in the complaint as true does not require [the court] to ignore specific factual details

of the pleading in favor of general or conclusory allegations."  <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d

1189, 1205-06 (11th Cir. 2007).  "Indeed, when the exhibits contradict the general and conclusory

allegations of the pleading, the exhibits govern."  <u>Id</u>. at 1206.

### 3.    <u>Legal Standard for Granting a Temporary Restraining Order and Preliminary Injunction</u>

The four factors to be considered in determining whether a temporary restraining order or

preliminary injunction is to be granted are whether the movant has established: "(1) a substantial

likelihood of success on the merits; (2) that irreparable injury will be will be suffered if the relief

is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the

nonmovant; and (4) that the entry of the relief would serve the public interest."  <u>Schiavo ex rel.</u>

<u>Schindler v. Schiavo</u>, 403 F.3d 1223, 1225-26 (11th Cir. 2005).  "Controlling precedent is clear

that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood

of success criterion."  <u>Id</u>.

When government personnel issues are involved, the standard for showing irreparable

harm is even greater.  In <u>Sampson v. Murray</u>, 415 U.S. 61 (1974), the United States Supreme

Court held that "Government has traditionally been granted the widest latitude in the 'dispatch of

its own internal affairs' [therefore plaintiff must] make a showing of irreparable injury sufficient

in kind and degree to override these factors cutting against the general availability of preliminary

injunctions in Government personnel cases." 415 U.S. at 84.

**B.     Captain Rhodes Has No Likelihood of Success on the Merits**

**1.     Captain Rhodes' Claims are Barred By Res Judicata and Collateral Estoppel**

Captain Rhodes has no likelihood of success on the merits because her claim is barred by

her prior litigation in the U.S. District Court for the Western District of Texas.  Rhodes v. Gates,

et al., (No. 09-cv-703, August 28, 2009).  A claim will be barred by prior litigation if (1) a final

judgment was rendered on the merits; (2) a court of competent jurisdiction made the decision;

(3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of

action is involved in both cases.  Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th

Cir.1999).  For purposes of *res judicata*, a cause of action is the same if it "'arises out of the same

nucleus of operative fact, or is based upon the same factual predicate.'"  Ragsdale, 193 F.3d at

1239 (quoting Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1503 (11th Cir.1990)).

"When claim preclusion does not apply to bar an entire claim or set of claims, the

doctrine of collateral estoppel, or issue preclusion, may still prevent the relitigation of particular

issues which were actually litigated and decided in a prior suit."  Citibank, N.A., 904 F.2d at

1501 (11th Cir. 1990).  The party seeking to bar an issue on collateral estoppel grounds must

establish four factors: (1) the issue is identical in both the prior and current action; (2) the issue

was actually litigated in the prior action; (3) the determination of the issue was critical and

necessary to the judgment in the prior action; and (4) the party against whom the earlier decision

is asserted has a full and fair opportunity to litigate the issue in the earlier proceeding.  Barger v.

City of Cartersville, Ga., 348 F.3d 1289, 1293 (11th Cir. 2003). Although *res judicata* requires a

final judgment, the finality requirement for collateral estoppel is "less stringent."  In re Bayshore

Ford Truck Sales, Inc., 471 F.3d 1233, 1253 (11th Cir. 2006), citing Christo v. Padgett, 223 F.3d

1324, 1339 (11th Cir. 2000).

Captain Rhodes' claims are barred by *res judicata* and collateral estoppel because the

Texas district court has already ruled on the claims that Captain Rhodes seeks to re-litigate in

this case.  First, the Texas Court's order is a final judgment for purposes of the res judicata

analysis in this case.  Captain Rhodes did not file a complaint in the Western District of

Texas–only an application for a Temporary Restraining Order.  Thus, that court's denial of her

application for a temporary restraining order was a final judgment on the only action pending

before the court.  Neverthless, even if this Court were to conclude that it did not constitute a final

judgement for purposes of res judicata, her claims are nevertheless barred by collateral

estoppel."  See In re Bayshore Ford Truck Sales, Inc., 471 F.3d at 1253.

The second factor in the analysis is met as the U.S. District Court for the Western District

of Texas is unquestionably a Court of competent jurisdiction.  The third factor is met as Captain

Rhodes' case in Texas was brought against two of the same defendants as the case at

bar–Secretary Gates and President Obama.  Captain Rhodes adds the chain of command at Fort

Benning as defendants in this action; however, these officers are subordinate to Secretary Gates

and President Obama and, therefore, are in privity with them.

As to the final factor, Captain Rhodes' cause of action is the same in this case as her case

in Texas because it arises out of the same nucleus of operative facts, and is based upon the same

factual predicate.  In both cases, Captain Rhodes has challenged her deployment orders to Iraq,

and does so on the premise that the President's legitimacy is "open to serious question." Pl. TRO

App. at 8.  In the present case, Captain Rhodes has attempted to reframe her claims into a challenge of the constitutionality of Article 138 of the U.C.M.J.[2], nevertheless, her claim at its base is simply an attempt to utilize her deployment orders as a vehicle to challenge the legitimacy of President Obama.

Because Captain Rhodes claims have already been decided by the District Court for the Western District of Texas, they are barred by res judicata and collateral estoppel, and they should be dismissed.[3]

**2.    Captain Rhodes' Case Presents Nonreviewable Political Questions**

Even assuming, *arguendo*, that Captain Rhodes' claims are not barred by res judicata and collateral estoppel, review of her claims would require this Court to make determinations that are committed to the political branches of government, they are nonjusticiable under the political question doctrine as well.  See, e.g., Gilligan v. Morgan, 413 U.S. 1, 10 (1973) (ordering dismissal of a suit seeking judicial oversight of rules governing domestic deployment of National

_____

[2]Captain Rhodes claims that Article 138 of the Uniform Code of Military Justice (U.C.M.J.), codified at 10 U.S.C. § 938, and as implemented by Army Regulation 27-10, are unconstitutional because they do not address the "lawful status of orders."  Pl. Compl. at 3. However, the purpose of Article 138 of the U.C.M.J. is to address discretionary acts or omissions by a service member's Commanding Officer, taken under color of federal military Authority, that adversely affect the service member personally.  Id.  It is inapplicable to claims such as this one regarding the legitimacy of the Commander-in-Chief.

[3]Defendant also notes that here, as in the Western District of Texas case, Captain Rhodes' attorney has failed to sign her application for a Temporary Restraining Order and Preliminary Injunction.  The Federal Rules of Civil Procedure require that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name..." Fed. R. Civ. P. 11.  Under Rule 11, the Court "must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."  The Court notified Captain Rhodes' attorney of this deficiency on September 4, 2009, (Docket #2), and she has failed to correct this omission.

Guard troops because "decisions as to the composition, training, equipping, and control of a military force" present non-justiciable political questions); <u>Sarnoff v. Connally</u>, 457 F.2d 809, 809-10 (9th Cir. 1972) (<u>per curiam</u>) (affirming dismissal as nonjusticiable a challenge involving war powers: "[t]he conduct of foreign affairs is within the exclusive province of Congress and the Executive").  That doctrine, the roots of which go back as far as <u>Marbury v. Madison</u>, 1 Cranch (5 U.S.) 137, 165-66 (1803), counsels courts to abstain from passing on questions more properly reserved to the political branches of government.

The Supreme Court has identified the following factors for determining whether an issue constitutes a political question:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

<u>Baker v. Carr</u>, 369 U.S. at 217.  A court should dismiss a case as nonjusticiable if any of these factors is "'inextricable from the case.'"  <u>Alperin v. Vatican Bank</u>, 242 F. Supp.2d 686, 689 (N.D. Ca. 2003) (<u>quoting</u> <u>Baker</u>, 369 U.S. at 217).

Evaluating these factors in the context of Captain Rhodes' claims leads to the inescapable conclusion that her case is nonjusticiable under the political question doctrine.  <u>See</u>

Massachusetts v. Laird, 451 F.2d 26, 30-34 (1st Cir. 1971) (dismissing as nonjusticiable a challenge to the Executive's continued commitment of troops to Vietnam); United States v. Helmy, 712 F.Supp. 1423, 1428 (E.D. Ca. 1989) (determining that Presidential designations on munitions and commodities lists "are the very product of a national security analysis," and thus "all of the enumerated Baker factors would, in some way, be affected by judicial review"); Ange v. Bush, 752 F. Supp. 509, 512 (D.D.C. 1990) (finding nonjusticiable a challenge to President's deployment orders and activities in Persian Gulf).

       To review Captain Rhodes' claims would be to countermand Executive and Legislative decision-making related to military composition and need with respect to the war in Iraq, a setting in which "the respect due coordinate branches of government" and the "need for unquestioning adherence" to political decisions, Baker, 369 U.S. at 217, are at their highest. Decisions about how to use the military are "committed expressly to the political branches of government," and the Constitution manifestly leaves those decisions "to the political branches directly responsible – as the Judicial Branch is not – to the electoral process." Gilligan, 413 U.S. at 10. Captain Rhodes raises quintessentially political questions with respect to the composition and necessity of the military. See Tiffany v. United States, 931 F.2d 271, 277 (4th Cir. 1991) ("With regard to decisions to employ military troops, 'it is not the function of the Judiciary to entertain private litigation . . . which challenges the legality, the wisdom, or the propriety of the Commander-in-Chief in sending our armed forces abroad or to any particular region.'") (quoting Johnson v. Eisentrager, 339 U.S. 763, 789 (1950)).  Review is inappropriate; therefore, Captain Rhodes has no chance of success on the merits.  Injunctive relief should, therefore, be denied, and her complaint should be dismissed.

3.      **Captain Rhodes' Claims Require Review of Nonjusticiable Military Decisions**

It is well established that uniformed military personnel may not bring suit against the armed forces or military superiors for incidents arising out of or in the course of their military service. Chappell v. Wallace, 462 U.S. 296, 301 (1983). In Chappell, the Supreme Court expanded the doctrine of intramilitary immunity established by Feres v. United States, 340 U.S. 135, 146 (1950). The "Feres doctrine," a by-product of that case, stands for the rule that Congress has not waived the sovereign immunity of the United States for suits brought by members of the military against their superiors. In Chappell, the Supreme Court extended its holding in Feres to bar federal and state law constitutional claims of military members when the injury complained occurred when the service member was on full-time active duty and was incident to their military service. Id. A few years later, the Supreme Court again expanded upon the doctrine of intramilitary immunity in United States v. Stanley, 483 U.S. 669, 683-84 (1987). The Supreme Court concluded that its holding in Chappell should apply to all activities performed incident to service "rather than merely to activities performed within the officer/subordinate sphere." Stanley, 483 U.S. at 680-81.

Captain Rhodes claims are clearly barred by intramilitary immunity. Captain Rhodes asks that this Court allow her, and all other commissioned officers on active duty, to be excused from any further compliance with orders issued by this administration, except as necessary to repel an invasion of the United States. Pl. Compl. at 16. There could be no clearer example of the type of claim that is barred by intramilitary immunity.

Because Captain Rhodes seeks review of nonjusticiable military decisions, she has no likelihood of success on the merits and her application for injunctive relief should be denied.

11

Likewise, because her claims are barred, her complaint should also be dismissed.

**C.    Captain Rhodes Cannot Demonstrate that She Will Suffer Irreparable Injury**.

Even if the Court were to find that it had jurisdiction over Captain Rhodes' complaint, she cannot demonstrate that she will suffer irreparable injury in the absence of an injunction.

Captain Rhodes maintains that she has no objection to military service–only military service in Iraq.  Pl. Compl. at 19-20.  Captain Rhodes, as with every other service member in today's military, voluntarily entered military service with full knowledge that she may be required to deploy overseas.  Her service, whether it occurs in Iraq or at Fort Riley, Kansas, is the same.  Thus, given that Captain Rhodes has no objection to military service in general, she cannot demonstrate that she will suffer irreparable harm from serving in Iraq as opposed to the continental United States.

Moreover, while Captain Rhodes cannot demonstrate irreparable harm under the ordinary, albeit stringent standards, for an injunction, she certainly cannot demonstrate irreparable injury under the heightened standard applied to government personnel issues, and military cases in particular.  See Sampson, 415 U.S. at 84; Guerra v. Scruggs, 942 F.2d 270, 274 (4th Cir. 1991).  Captain Rhodes is requesting that this Court interfere with internal military decision-making, therefore she must establish that she will suffer irreparable harm consistent with the extraordinary request she is making of this Court.   "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  Sampson, 415 U.S. at 90.

As Captain Rhodes cannot demonstrate that she will suffer irreparable injury if required

to comply with her deployment orders, she has failed to establish the second criterion for the award of injunctive relief.

**D.    The Harm to the Army Would Outweigh Any Speculative Injury to Captain Rhodes.**

The Court must consider the likelihood of irreparable harm to the nonmoving party if the injunction is granted.  In evaluating the harm to the Army, the Court must not focus narrowly on this single case.  Rather, the court must consider the precedential effect that improperly granting the injunction would have on the military as a whole.  Guerra, 942 F.2d at 275; Qualls v. Rumsfeld, 357 F. Supp. 2d 274, 286-287 (D.D.C. 2005).  Any determination that the harm to the Army is minimal in a case challenging a call to active duty could establish a disruptive precedent.  Parrish v. Brownlee, 335 F. Supp. 2d 661, 669 (D.N.C. 2004).  As the court noted in Irby v. United States:

> Without looking at the total effect of such cases, courts might consistently find that the harm tipped decidedly in favor of the plaintiffs. As a result, there would be few occasions when a preliminary injunction would not issue. Any plaintiff could allege the weakest claims and temporarily forestall an order to active duty or other disagreeable military decision.

Irby v. United States, 245 F. Supp. 2d 792, 798 (E.D. Va. 2003).  An injunction in this case could open the floodgates for litigation by soldiers seeking to stay military action.  If the Court were to grant an injunction to Captain Rhodes, soldiers would routinely seek out injunctions to prevent the execution of valid military orders until they could seek review of those decisions through the judicial process.  Moreover, at this time when the nation is at war, the service of every soldier is vital.

13

The harm to the Army in this case, both from losing the services of Captain Rhodes for the foreseeable future, and from the precedential effect of such an injunction, far outweighs any speculative harm that Captain Rhodes might suffer from being required to fulfill her obligation to serve.

**E.     An Injunction Would Not Serve the Public Interest.**

A stay must be denied whenever the movant fails to carry the burden of establishing that it will not be harmful to the public interest.  Hamlin Testing Laboratories Inc. v. Atomic Energy Commission, 337 F.2d 221, 222 (6th Cir. 1964).  Captain Rhodes cannot met her burden of establishing that an injunction will serve the public interest in this case.  The public has an interest in seeing that the Army's discretionary decision making with respect to personnel decisions is effectuated with minimal interference.  The intrusion of an injunction "would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities." Orloff v. Willoughby, 345 U.S. 83, 94-95 (1953); Guerra, 942 F.2d at 275; Kries v. Sec'y of the Air Force, 866 F.2d 1508, 1513-14 (D.C. Cir., 1989); Dilley v. Alexander, 603 F.2d 914, 920 (D.C. Cir., 1979).  These and other cases establish that an injunction that interferes with the proper functioning of our military forces has the potential for substantially harming the Army and cannot be said to be in the public interest.

As Captain Rhodes has not established that the public interest would be served by the issuance of an injunction, her request for a temporary restraining order and preliminary injunction must be denied.

## III. **CONCLUSION**

As Plaintiff has failed to establish any of the factors required for injunctive relief,

Defendants respectfully request that the Court deny her application for a temporary restraining

order and preliminary injunction.

Respectfully submitted,

G. F. PETERMAN, III
ACTING UNITED STATES ATTORNEY

BY:    s/ *Sheetul S. Wall*
Sheetul S. Wall
Georgia Bar No. 734724
Assistant United States Attorney
Middle District of Georgia
P.O. Box 2568
Columbus, GA 31902
Telephone: (706) 649-7700
Facsimile: (706) 649-7667

OF COUNSEL:
MAJOR REBECCA E. AUSPRUNG
Department of the Army
U.S. Army Litigation Division
901 North Stuart Street, Suite 400
Arlington, VA 22203-1837
Tele: 703-696-1614
Email: Rebecca.Ausprung@us.army.mil

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2009, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to

the following:

Orly Taitz, DDS, Esq.
29839 S. Margarita Pkwy.
Rancho Santa Margarita, CA 92688

I further certify that I mailed the foregoing document and the notice of electronic filing by

first-class mail to the following non-CM/ECF participants:N/A

G. F. PETERMAN, III
ACTING UNITED STATES ATTORNEY

BY:    s/ *Sheetul S. Wall*
Sheetul S. Wall
Georgia Bar No. 734724
Assistant United States Attorney
Middle District of Georgia
P.O. Box 2568
Columbus, GA 31902
Telephone: (706) 649-7700
Facsimile: (706) 649-7667

N:\SWall\Rhodes COS TRO\Def_TRO Opp Brief - Rhodes.wpd

16