Orly Taitz, Esq
Attorney & Counselor at Law
29839 S. Margarita Pkwy
Rancho Santa Margarita CA
ph. 949-683-5411
fax 949-766-7603
California Bar ID No. 223433
Pro hac vice Middle District of GA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION
**120 12th Street  P.O. Box 124  Columbus, Georgia 31902**

| | | |
|---|---|---|
| CAPTAIN CONNIE RHODES, M.D. F.S., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| COLONEL THOMAS D. MACDONALD, | § | Civil Action No:09-106 |
| GARRISON COMMANDER, FORT | § | |
| BENNING, GEORGIA, | § | |
| GEORGE STEUBER, DEPUTY | § | MOTION TO RECUSE |
| COMMANDER, FORT BENNING, | § | THE HONORABLE |
| DR. ROBERT M. GATES, UNITED | § | JUDGE CLAY D. LAND |
| STATES SECRETARY OF DEFENSE, | § | |
| BARACK HUSSEIN OBAMA, *de facto* | § | |
| PRESIDENT of the UNITED STATES, | § | |
|     Defendants. | § | |

**MOTION TO RECUSE THE HONORABLE
CLAY D. LAND PURSUANT TO 28 U.S.C. §§144 and 455(a)**

The undersigned Orly Taitz, former counsel to Plaintiff Captain Connie Rhodes files this Motion to Recuse pursuant to 28 U.S.C. §§144 and 455(a), in support of both theories of recusal. First, there is some circumstantial evidence that Judge Clay D. Land may have had extrajudicial and ex-parte contacts with the Obama administration, in particular from Attorney General Eric Holder (See Affidavit, Exhibit A). Second, a preliminary review of the results of the Honorable Judge Clay D. Land's public disclosures concerning his investments, it

also appears to the undersigned that Judge Land may be disqualified because he has equity ownership of certain securities (e.g. Microsoft and Comcast) which are aligned both politically and economically with a key Defendant in this case, namely the *de facto* President of the United States, Barack Hussein Obama, in such a direct and personal way that it could be said that this Judge has a financial stake in the outcome of the former Plaintiff Captain Connie Rhodes' original case-in-chief.  See, for example, Judge Land's signed disclosures at:

> http://www.judicialwatch.org/judge/land-clay-d
> http://www.judicialwatch.org/jfd/Land_Clay_D/2003.pdf
> http://www.judicialwatch.org/jfd/Land_Clay_D/2004.pdf,
> http://www.judicialwatch.org/jfd/Land_Clay_D/2005.pdf.
> http://www.judicialwatch.org/jfd/Land_Clay_D/2006.pdf
> http://www.judicialwatch.org/jfd/Land_Clay_D/2007.pdf

The primary reason for the undersigned counsel to file this Motion to Recuse, however, is that Judge CLAY D. LAND has by his own actions created a constitutionally intolerable situation in which he is both complaining party, prosecuting attorney, judge and jury regarding the charges of frivolous filing and sanctionable conduct which he has leveled *sua sponte* and filed pursuant to Rule 11(c)(3) of the Federal Rules of Civil Procedure.

> A troublesome aspect of a trial court's power to impose sanctions, either as a result of a finding of contempt, pursuant to the court's inherent power, or under a variety of rules such as Fed. R. Civ. P. 11 and 37, is that the trial court may act as accuser, fact finder and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed. See *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 831, 114 S. Ct. 2552, 2559, 129 L. Ed. 2d 642 (1994) ("Unlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct.") The absence of limitations and procedures can lead to

unfairness or abuse.

***Mackler Productions, Inc., v. Cohen et al.,*** 146 F.3d 126 (2nd Cir., 1998).

The Court's Order to Show Cause, rendered September 18, 2009, expressly identifies the origin or authority of the court's intention to sanction the undersigned as Rule 11 of the Federal Rules of Civil Procedure, but also states in conclusion: "The Court notifies Plaintiff's counsel, Orly Taitz, that it is contemplating a monetary penalty of $10,000.00 to be imposed upon her, as a sanction for her misconduct."  Page 7 of 9-18-09 Order (Document 18 in the Clerk's Docket Report for this case on PACER).   The text of the order is generally ambiguous and quite confusing as to exactly what Judge Land intends by his order, other that the use of the Court's inherent "contempt" power in and for the purpose of  suppressing the undersigned counsel's First Amendment Rights.

To begin with, this Court has ordered the undersigned counsel to show cause why a "monetary penalty of $10,000.00" should not be imposed on her. The word "penalty" suggests that the Court considers this to be a CONTEMPT proceeding, as does the fact that, on pages 1-2 of the same September 18, 2009, order, the court writes "This filing ***CONTEMPTUOUSLY*** ignores the Court's previous admonition that Plaintiff's counsel discontinue her illegitimate use of the federal judiciary to further her political agenda."  (all caps and bold italic highlighting added for emphasis).  If the words "penalty" and "contemptuously" be taken at face value, then indeed, the undersigned counsel is entitled to certain protections, including a trial-by-jury.  The United States Supreme Court has held that contempt punishable by more than a $500 fine or "penalty" is not petty, and that an accused contemnor is entitled to a full "trial-by-jury." ***Frank v. United***

***States,*** 395 U.S. 147; 89 S.Ct. 1503; 23 L.Ed.2d 162 (1969).  The Court's purpose seems plainly punitive, the Court was not prompted by any party's motion for sanctions in this case, and in essence, because (as will be seen below) the strictures of Rule 11 do not readily appear to apply to this case, it is probably that the Court is relying here on its own inherent power to punish contempts, and that Plaintiff must be afforded BOTH an impartial and dispassionate magistrate (which could NOT POSSIBLY include the complainant, Judge Clay D. Land) and a trial-by-jury because of the "penalty" amount of $10,000.00.

However, on page 2 the Court then goes on to recite that it

. . finds that the claims and legal contentions asserted in the present motion are not warranted by existing law and that no reasonable basis exists to conclude that Plaintiff's arguments would be accepted as an extension, modification, or reversal of existing law.

and

. . further finds that Plaintiff's motion is being presented for the improper purpose of using the federal judiciary as a platform to espouse controversial political beliefs rather than as a legitimate forum for hearing legal claims.  Counsel's conduct violates Rule 11 of the Federal Rules of Civil Procedure and sanctions are warranted.

This is an absolutely fascinating twist on Rule 11.  While the first sentence just quote from Judge Land's page 2 is essentially a direct quote from Rule 11(b)(2), Rule 11(b)(1) clearly establishes that an attorney's "presentation" to a court must "not be[] presented for any improper purpose such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Accordingly, Judge Land would seem to be blazing a new trail of Rule 11 jurisprudence in suggesting that a motion is sanctionable when "presented for the improper purpose of . . . espous[ing] controversial political beliefs . . . "  In sum, this is a

***Motion to Recuse the Honorable Clay D. Land,***                                    4
***M.D. Georgia, pursuant to 28 U.S.C. §§144 and 455(a)***

case of punitive sanctions for conduct, at least the "political advocacy" half of which is neither directly nor indirectly covered by Rule 11, which must be classified, at the very least, as a "quasi-criminal proceeding."

> For that reason, appellate courts have ruled that, in certain sanctions proceedings, the person facing imposition of sanctions should have the benefit of the procedural protections available to a person charged with a crime. (Criminal protections are generally thought to include, in addition to notice and the opportunity to be heard, the right to a public trial, assistance of counsel, presumption of innocence, the privilege against self-incrimination, and the requirement of proof beyond a reasonable doubt. See *Bagwell*, 512 U.S. at 826, 114 S. Ct. at 2556-57; *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993); *Satcorp Int'l Group v. China Nat'l Silk Import & Export Corp*., 101 F.3d 3, 6 n. 1 (2d Cir. 1996)(per curiam).) It is undisputed that Cohen did not receive the benefit of criminal procedures. The disputed issue is whether the imposition of the $10,000 sanction on Cohen required that he be afforded criminal procedural protections.

**Mackler Prods., Inc. v. Cohen, 146 F.3d 126 at 128.**

> The Second Circuit in *Mackler* concluded as follows:

> Similar factors persuade us that, although the imposition of a sanction for litigation misconduct is not technically a conviction of a crime, the $ 10,000 sanction imposed in this case required the protections of criminal procedure. The sanction was not intended to be compensatory; indeed, the court imposed it in addition to a compensatory sanction and explicitly labelled it as punitive. The imposition was retrospective, by reason of past wrongful conduct; it did not seek to coerce future compliance, and no opportunity to purge was provided. The sanction was payable to the court, rather than to the injured party, further confirming its punitive nature. And the size of the required payment was substantial.

**Mackler,** 146 F.3d at 129.

> Whether or not a finding of contempt is involved, unfairness and abuse are possible, [**12] especially if courts were to operate without any framework of rules or cap on their power to punish. In either case, the individual bears the risk of substantial punishment by reason of obstructive or disobedient conduct, as well as of vindictive pursuit by an offended judge. We conclude,

notwithstanding the differences mentioned above, that the imposition of a sufficiently substantial punitive sanction requires that the person sanctioned receive the procedural protections appropriate to a criminal case.

We conclude that the imposition of a $ 10,000 punitive sanction on an individual (as opposed to a corporation or collective entity) requires such protections. . . . [Footnote 3] If the district court undertakes retrial of the punitive sanction, it should consider whether the appellant will have the right to jury trial.

*Id.* at 130.

Of course, the imposition of either punitive sanctions or criminal contempt of court based on an order to show cause which focuses most of it's real energy on criticizing and attorney for vigorous and exuberant political advocacy raises a number of deeply troubling Constitutional questions, some of which relate to the inherent power of a court to use its punitive power of sanction to suppress unpopular views and some of which relate the availability of this judge as a detached and impartial magistrate.

This is clearly one of the situations in which the line demarcating "law" and "politics" is extremely unclear.  "Politics" is, after all, the process by which "beliefs" become law.  The original Plaintiff in this case, Captain Connie Rhodes retained the undersigned counsel for the purpose of advocating her "belief" that the words of the United States Constitution mean something more than dust in the wind, especially in light of her commissioned officer's oath to uphold the Constitution, regarding which  highly meaningful and significant oath this Court has never written a single word.

On page 6, the Court returns from a litany of charges that all of the actions of Plaintiff's counsel in this case were "frivolous" to its charge that a case

with political overtones and consequences is not appropriate in a lawsuit
brought in court:

> . . . it is clear that Plaintiff's counsel seeks to continue to use the
> federal judiciary as a platform to further her political "birther
> agenda." . . . She supports her claims with subjective belief,
> speculation, and conjecture, which have never been sufficient to
> maintain a legal cause of action.

How exactly does the Court know about the "birther agenda" and why does
the Court use such a pejorative term to refer to the contention that the words of
Article II, Section 1, Clause 5 of the Constitution are critical qualifications to be
enforced by the people in Court when Congress and the electoral college fail to do
so? The undersigned counsel submits that this Judge has, among other things,
radically PREJUDGED the case which the former Plaintiff Captain Connie
Rhodes brought, when he finds that there is "no legal or factual basis" for her
contentions, as when he states that "she supports her claims with subjective
belief, speculation, and conjecture...."

What exactly does the Court find so very speculative or subjective about
private investigator's reports, expert opinions, colored and/or certified copies of
Kenyan birth records admissible under the "ancient documents" doctrine of the
Federal Rules of Evidence?  Is/was this Court not even mildly curious why the
President of the United States would have, on the day after his inauguration,
issued two Executive Orders [included in the Complaint and Application for
TRO] sealing his personal records from public scrutiny?  Is the entry of such a
pair of executive orders on January 21, 2009, as were reproduced and quoted in
Plaintiffs' Complaint and Application for TRO, not relatively strong
circumstantial evidence that this Court could consider both relevant and

admissible (as a public record easily authenticated) to deciding the question of whether Barack Hussein Obama's photoshop birth certificate from Hawaii should be taken at face value?

Could these questions potentially render the results of the 2008 election void on constitutional grounds? Yes. Could such a result have dramatic political consequences? Yes. Is it a frivolous case, merely because it has such potential political consequences? Not when compared with *Bush v. Gore* (2000), *Jones v. Clinton* (1996), or *United States v. Nixon* (1974), which were all based on substantially less obvious constitutional questions or violations, which were also much more difficult both to detect, determine with certainty, and ultimately to prove, than the Constitutional issues brought in this case. Yes, indeed, a litigation regime, a judiciary, without genuine political questions before it would have a much lighter case load.

What, for example, was ever more political in 20th century Georgia than the question of school desegregation? Surely this distinguished Southern Judge would have jailed Thurgood Marshall in the 1940s and '50s for contempt when the future Supreme Court Justice repeatedly filed cases demanding on constitutional as well as social and psychological grounds the desegregation of primary and secondary public schools against well-established precedents such as *Plessy v. Fergusson*, 163 U.S. 537 (1896). Apparently in Judge Land's courtroom, any case with political consequences is an abomination, and this excludes just about every civil case except for disputes over bills of lading under the U.C.C., because even the average ERISA case and every other insurance of pension fund case is fraught with public policy, i.e., political, concerns.

Accordingly, let the lawyer beware who dares to sue in Judge Land's Court for civil rights violations by a politically popular local sheriff, or to redirect a highway around a swamp habitat for endangered species at great cost to local taxpayers, or to file any case involving abortion or contraception, or to invalidate a zoning ordinance or variation designed to increase property values, or even, Heaven Forbid, to suggest that this Court entertain a voting rights act complaint alleging that the POLITICAL outcome of an election might be altered by unconstitutional apportionment or gerrymandering. Law is political and politics are all about law---what it is and what it ought to be.

The Constitution was adopted to achieve and maintain certain political goals, such as the procurement of "the blessings of liberty", as well as economic prosperity and the general welfare. The Constitutional restrictions on the "natural born" citizenship and status of the President likewise had the expressly political purpose of preventing foreigners, insofar as "foreigners" could be defined or excluded in a nation of immigrants, from taking command of our armies, our vast executive departments and administrative bureaucracy, and all the other associated powers of the Presidency.

More seriously, in relating to this Motion to Recuse, the undersigned counsel submits that the tenor of this Court's orders, and the rapidity of their rendition, both support the inference that the Court harbors a deep-seated prejudice and bias against counsel, and that such bias, because of its very nature and substance is extra-judicial in origin and transmission to the Court.

For example, on page 6 of the Court's September 18, 2009 order, Judge Land refers again to the undersigned counsel as "a leader in the so-called "birther

movement.""" (Footnote 4).  Since the undersigned certainly did not invent or ever adopt the term "birther", awareness of this label is a pejorative appellation (often coupled with even more colorful epithets such as "batshit crazy"), and since she does not go around introducing herself or her clients as part of a "movement" in any sense, certainly not in court, it can only be concluded that Judge Clay D. Land has derived his information, and prejudice, and bias, against the undersigned by reference to material which is exclusively available from extra-judicial sources.

### EXCEPT FOR PERVASIVE BIAS, WHY WOULD THE COURT AVOID 90% of the Content of the Plaintiff's Complaint, which concerned the Constitutionality of Military Procedures rather than actual deployment issues?

In regard to the merits of the case, by unilaterally denying Plaintiff's access to the Courts in violation of the First, Fifth, and Ninth Amendments to the United States Constitution, Judge CLAY D. LAND barred Plaintiff from filing a meritorious complaint, albeit one of first impression, seeking declaratory judgments concerning the organization and constitutional legitimacy of the military and further seeking construction and interpretation of a U.S. Army commissioned officer's sworn duty to uphold the United States Constitution against all enemies, foreign and domestic.

When a Judge shows heavy handed bias without even itemizing the ACTUAL issues raised in a pleading, motion, and application for TRO, he is showing pervasive bias which is plainly extrajudicial, because there is no possible "judicial, litigation experience based" source for the bias and prejudice. This is not a case where Judge LAND's knowledge and prejudice results solely from his

contact with Plaintiff and his Counsel in a case which has lasted for a year and a quarter of litigation, or more.  It is obvious from Documents 3 and 6 submitted in this case that the Honorable CLAY D. LAND never read the first line of the Complaint or Application for TRO.  As the United States Supreme Court has held (per Justice Scalia) that

> ...favorable or unfavorable predisposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment. (That explains what some courts have called the "pervasive bias" exception to the "extrajudicial source" doctrine. See, e.g., ***Davis v. Board of School Comm'rs of Mobile County***, 517 F.2d 1044, 1051 (CA5 1975), cert. denied, 425 U.S. 944, 48 L. Ed. 2d 188, 96 S. Ct. 1685 (1976).)

***Liteky v. United States***, 510 U.S. at 551, 114 S.Ct.at 1155, 127 L.Ed.2d at 488 (1994)(see further discussion below).

## THE ACTUAL SUBSTANCE OF THE COMPLAINT

Judge LAND was prejudiced against Captain Rhodes as an individual challenging the constitutional legitimacy of the chain of command based on a constitutional challenge to the eligibility of the President, but he is more directly prejudiced against this undersigned counsel because of her perceived role in the "politically controversial" "Birther Movement."  Judge Land focuses on the equitable complaint for restraint of deployment even though Plaintiff's complaint is (was) simultaneously much broader in its significance than that one single issue, in that it seeks to reform U.S. Army custom, practice, and policies regarding blind obedience to orders.  That Judge LAND's bias stems from an extra-judicial source is apparent from (and in fact, is the ONLY reasonable or possible interpretation of) the substantive text of his orders.

It is clear and obvious from Judge Land's determination of Plaintiff Connie Rhodes' lack of standing (and the undersigned counsel's "negligence" or "contemptuous disregard" of the court's orders in failing to stand down when ordered to do so ) in and from the fact that Judge Land clearly and plainly did not read the Plaintiff's Complaint or Application for TRO, and from the rapidity of his decision to deny Plaintiff his Seventh Amendment right to a trial-by-jury without first evaluating the sufficiency of 85%-90% of the issues in Plaintiff's complaint.

Plaintiff suspects and submits upon the substantial if circumstantial evidence of the rapidity of the entry of these orders that an invisible external and extra-judicial but governmental hand may have guided and informed Judge LAND's judicial actions.  Whether Judge LAND acted prejudicially upon orders or coercion from other branches of government or if Judge LAND is acting solely and exclusively out of blind personal prejudice against the questions presented by Plaintiff's Application and Complaint, Judge LAND is disqualified to serve as judge and must either recuse himself or be recused.

The challenges which Plaintiff originally sought to have lodged in this case concern (1) the right and power of an unconstitutional commander-in-chief to render lawful orders, and (2) the right and power of a commissioned officer of the United States Army to follow and protect his oath to uphold the constitution, AND (3) the procedures by which an officer must be allowed and empowered to question the lawful nature and status of orders received and to then and there demand an authoritative and independent determination of the constitutional validity of the Army Chain-of-Command and its actions under U.S. and International law if led by an ineligible President.

The United States Court of Appeals for the Sixth Circuit has ruled in a similar case (wherein an order of dismissal had already been entered):

> 28 U.S.C.S. § 455 should, in proper cases, be applied retroactively in order to rectify an oversight and to take the steps necessary to maintain public confidence in the impartiality of the judiciary.
> *    *    *    *    *    *    *    *    *    *
> Our view of the procedure to be followed in dealing with issues under § 455 is reinforced by the Supreme Court's recent decision in **Liljeberg v. Health Services Acquisition Corp**., 486 U.S. 847, 56 U.S.L.W. 4637, 100 L. Ed. 2d 855, 108 S. Ct. 2194 (1988), applying § 455 strictly and holding that § 455 should "in proper cases, be applied retroactively" in order "to rectify an oversight and to take the steps necessary to maintain public confidence in the impartiality of the judiciary." Id. at 4641.

**Barksdale v. Emerick**, 853 F.2d 1359 at 1362 (6th Cir. 1988).

In a manner and litigation posture exactly analogous to that of the present case, the Sixth Circuit in **Barksdale** allowed (and indeed mandated) RETROACTIVE RECUSAL even where the Motion to Recuse was filed 10 days after the entry of an order of dismissal. 853 F.2d at 1361. Retroactive recusal due to bias is required in the present case because, quite simply, Judge LAND has acted, ironically enough, for expressly and explicitly political reasons, clothed in the flimsiest of jurisprudential clothes. And in thus aborting litigation has hardly even allowed the development of an adequate record even to take before a Court of Appeals. The fact that Judge LAND has already now "done his worst" does not render this Motion untimely (it is being filed less than ten business days after denial of Plaintiff's Emergency Motion for Stay of Deployment), nor will the interests of justice be served by disregarding it, no matter how politically sensitive certain select but separable aspects of Plaintiff's Complaint may seem to be.

## THE RIGHT TO AN IMPARTIAL AND DISINTERESTED JUDGE IS FUNDAMENTAL UNDER THE FIFTH AND NINTH AMENDMENTS

Due process demands that the judge be unbiased. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases." (emphasis added)). Furthermore, a judge can and should be disqualified for "bias, [] a likelihood of bias[,] or [even] an appearance of bias." See *Ungar v. Sarafite*, 376 U.S. 575, 588, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); see also *Murchison*, 349 U.S. at 136 ("[O]ur system of law has always endeavored to prevent even the probability of unfairness."); accord *Anderson v. Sheppard*, 856 F.2d 741, 746 (6th Cir. 1988) (opining that due process "require[s] not only an absence of actual bias, but an absence of even the appearance of judicial bias"). See also, generally, *Railey v. Webb*, 540 F.3d 393, 399-400 (6th Cir. 2008).

The undersigned counsel hereby submits that Judge LAND's participation in this case as a complaining witness in what at the very least amounts to a quasi-criminal prosecution violates Plaintiff's due process rights as explicated in several Supreme Court cases namely *Tumey v. Ohio*, 273 U.S. 510, 523 (1927**), In Re Murchison**, 349 U.S. 133, 136 (1955), and *Ward v. Village of Monroeville* 409 U.S. 57, 61 (1972).   In particular, it is obvious that under no circumstances will or would Judge LAND ever allow Plaintiff to submit any facts or mixed questions of fact and law to a jury, despite the guarantees of the 7th Amendment, the public policies articulated by 28 U.S.C. §1861, and Rule 38 of the Federal Rules of Civil Procedure.

There is circumstantial evidence (Exhibit A) suggesting that, in fact Judge LAND was influenced by prior association or direct ex-parte communications with Attorney General Eric Holder, acting as agent on behalf of ***de facto*** President Obama. Even if there were no such evidence, Plaintiff herein need only allege and point to the public record in this case to demand immediate and retroactive recusal and ask whether Judge LAND's blitzkrieg-like rulings while sitting on Plaintiff Captain Rhodes's case appears objectively improper and/or gives a reasonable person the belief and/or firm conviction based on inference that either Judge LAND's personal and extrajudicial background circumstances and interests, prejudices, and biased have "...lead him not to **hold** the **balance nice,** clear and true.'" ***Ward,*** 409 U.S., at 60 (quoting ***Tumey v. Ohio***, 273 U.S., at 523, 532).

The Due Process Clause "may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, 'justice must satisfy the appearance of justice.'" ***Murchison,*** 349 U.S., at 136 (citation omitted). Judge CLAY D. LAND has not satisfied the appearance of justice. Judge LAND has also completely failed to evaluate or even pretend to have read enough of Plaintiff Rhodes's Application for TRO and Complaint to determine whether or not Plaintiff Rhodes has standing, for example, to demand a declaratory judgment regarding the procedures by which a commissioned officer may adhere to his oath by questioning the constitutionality or lawful status of military orders received, even in times of domestic peace (and there are severe constitutional questions and doubts under international law concerning

the constitutional nature and lawful status of the so-called "Global War on Terrorism" ("Overseas Contingency Operations") as an instrument of national or international policy.

While Plaintiff and undersigned counsel are both quite aware that a Judge's rulings on legal questions, without more, will ALMOST never constitute grounds for recusal, Plaintiff submits that Judge LAND's manner of precipitous, hasting, unreflective rulings within mere hours of filing, and his rulings on one particular issue, that of the Plaintiff's lack of STANDING (without addressing any of the actual text of the Plaintiff's complaint, and in fact, obviously misunderstanding it) produces a result so bizarre as to flunk the "reasonable jurist" standard, and therefore constitutes grounds for recusal under 28 U.S.C.§455(a) on the grounds of appearance of impropriety, unwillingness to decide a case fairly in regard to this particular issue, litigant, or perhaps even Plaintiff's attorney.

The United States Supreme Court has characterized the inquiry whether a rule stated by the court in a case is new as an inquiry whether reasonable jurists could disagree as to whether a result is dictated by precedent, the standard for determining when a case establishes a new rule is objective; for such purposes, the mere existence of conflicting authority does not necessarily mean a rule is new. **Williams v. Taylor**, 529 U.S. 362; 120 S.Ct.1495; 146 L.Ed.2d 389 (2000).

Judge LAND fails the "reasonable jurist" test in his immediate denial of the Plaintiff's Application for the TRO just as surely as he failed that same test in connection with the question of standing, and it is plain that BOTH failures

resulted from the Judge's refusal to consider the Plaintiff's documents filed as a whole, in that the Judge did not even recognize the numerous issues listed and raised in both the TRO aside from the (by evasive governmental action) issue of ephemeral orders, issued one day and revoked the next, but always with the exact same constitutionally infirm "chain of command."

**SUMMARY AND CONCLUSIONS**

Judge LAND dismissed Captain Rhodes's Application for Temporary Restraining Order and Complaint for Declaratory Judgment and Injunctive relief. Now he finds that the Complaint was frivolous because it had significant political overtones and that the undersigned counsel should be sanctioned in the amount of $10,000.00 as a penalty for her misconduct. Judge Land's Order to Show cause amounts to a threat of prosecution for criminal contempt on charges of filing suit regarding a matter fraught with political significance and controversy.

Unless he is recused, Judge Land will act as Complaining Witness, Prosecutor, Judge, and Jury of his own punitive quest to suppress the undersigned attorney in the exercise of her fundamental First Amendment rights to petition. There is simply NO element of Rule 11 of the Federal Rules of Civil Procedure, which prohibits any party or attorney from bringing politically sensitive cases to Court, even those with potentially radical political consequences. In fact, any case regarding separation of powers or the enforcement of any and all provisions of the Constitution is fraught with political controversies and implications which cannot and should not be avoided.

Plaintiff's Complaint, which is/was not primarily focused on a resolution of the eligibility of President Barack Obama, but on the status of the Army and its

officers under constitutional oath "to protect against all enemies, foreign and domestic", was well-grounded in law or in a good faith effort to modify, extend, or reverse existing law, and to establish new law. The undersigned attorney submits that any impartial and dispassionate magistrate will so judge her work, and she requests the immediate recusal of Judge Land as her sole adequate remedy.

WHEREFORE, the undersigned counsel prays that this Court should PROCEED NO FURTHER, pursuant to the Rule of Law Articulated in 28 U.S.C. §144, and that the Honorable Judge CLAY D. LAND should voluntarily recuse himself permanently to allow an independent review of the (exceptionally brief, swift, and non-adversarial proceedings in this case, which amounted to a reflexive and unthinking denial of access to the Courts, in which Judge LAND was the only adversary, acting directly or indirectly, intentionally or unintentionally, as part of a VERY consistent custom, pattern, practice, and policy of concerted government denial of redress or resolution on this issue of supreme public interest and importance) by an impartial judge without connections of any kind to the parties or histories of litigation in this case.

Pursuant to 28 U.S.C. §144, no further action in this case may be taken without further decision by the Chief Judge of the Middle District of Georgia with regard to the appointment of an independent judicial review of Judge CLAY D. LAND's management and the character of his disposition of issues in this case. Such an independent review is required as consistent with due process of law and the reasonable perception of impartiality or bias in Judge LAND's course of conduct and disposition of all aspects of Captain Connie Rhodes' complex litigation which had been filed against the United States Department of Defense

and others in the executive branch for the purpose of verifying the Constitutional validity of the chain of command and the procedural means by which an officer may uphold his oath of office and statutory duty to uphold the Constitution of the United States and to obey ONLY lawful orders. These are not matters on which a reasonable jurist should wish to abstain or leave to the military courts.

In sum, Judge Land has shown pervasive bias of an extrajudicial origin. Judge Land may have conflicts of interest, which disqualified from hearing this case. Judge Land, as a complaining witness, cannot possibly preside over the punitive contempt proceedings, which he himself has initiated against the undersigned because he cannot possibly provide the full panoply of procedural safeguards to which the undersigned is plainly entitled due to the severity and circumstances of the Order to Show Cause and potential sanctions.

Respectfully submitted,

Friday, October 2, 2009

By:
*/s/ Orly Taitz, Esq.*
_____
Dr. Orly Taitz, Esq., Attorney-at-Law
*in propia persona*
29839 Santa Margarita Parkway
Rancho Santa Margarita, California

Telephone: 949-683-5411
Facsimile 949-766-7603

(California SBN 223433)

E-Mail: dr_taitz@yahoo.com

# Exhibit A:
# Affidavit Regarding
# Eric Holder's Visit
# To Columbus, Georgia

## ATTORNEY'S CERTIFICATE OF GOOD FAITH

I, Orly Taitz, am an attorney licensed to practice law in the State of California, before the Supreme Court of the United States, and other Federal District Courts.  I am in the process of seeking admission ***pro hac vice*** in the United States District Court for the Middle District of Georgia.

I was the attorney for the Plaintiff in this case, Captain Connie Rhodes, and I have reviewed the law and the circumstances underlying Judge Clay D. Land's conduct in connection with this cause.

I agree that a reasonable person would be likely, if not almost certain, to conclude that Judge Clay D. Land's rapid, in fact "lightening like", disposition of this case was a result of preconceived, extrajudicial notions and pervasive bias based either on politics or on some other external factor having nothing to do with Captain Rhodes's Complaint, Application(s) for Temporary Restraining Order, and Motion to Reinstate the same, because nothing in Judge Land's orders that the Honorable Judge even read the first page of any of these documents, much less the prayer(s) for relief.

For these reasons I certify, as counsel appearing on my own behalf ***in propia persona***, that this Motion to Recuse and Affidavit in support thereof are both submitted in good faith.  The Plaintiff's Motions are certainly and surely not submitted for purposes of delay, because nothing could be faster, nor anything more unreasonable and "injudicious" than Judge CLAY D. LAND's complete suppression of Captain Rhodes's complaint and the majority of her issues, effectively by slamming the courthouse door in my and my client's face.

Captain Rhodes's case was and is well-grounded in law and facts, and his allegations are by no means concerned exclusively, merely, or simply with the birth records of ***de facto*** President Obama, but in fact stand as a challenge to the United States Army regarding the procedures for verification of the lawful and constitutional status of orders issued, and the relationship between an officer's obligation to obey "lawful" orders and his duty to preserve, protect, and defend the Constitution of the United States against all enemies, foreign and domestic.

I believe and submit that Judge Clay D. Land's handling of this case appears to me, as an officer of the court, to be politically motivated rather than legally justifiable, and for that reason I am submitting and advancing my present Motion to Recuse this Judge Pursuant both to 28 U.S.C. §144 and 28 U.S.C.§455(a).

I have executed, made, and signed this Certificate of Good Faith as a Declaration under Penalty of Perjury, as allowed by 28 U.S.C. §1746, and I do accordingly certify, verify, and state under penalty of perjury that the foregoing Certificate of Good Faith is true and correct.

Done on Friday, October 2, 2009, in Rancho Santa Margarita, Orange County, California.

*/s/ Orly Taitz, Esq.*

By:_____

Dr. Orly Taitz, Esq. (SBN 223433)
Attorney for the Plaintiffs
29839 S. Margarita Pkwy
Rancho Santa Margarita CA
ph. 949-683-5411
fax 949-766-7603

Telephone (949) 683-5411
E-Mail: dr_taitz@yahoo.com

## CERTIFICATE OF SERVICE

   The above-and-foregoing Motion to Recuse the Honorable Clay D. Land was served by facsimile on Friday, October 2, 2009, on the following parties:

Colonel Thomas D. MacDonald
Garrison Commander, Fort Benning, Georgia
Hugh Randolph Aderhold , Jr.
PO Box 1702
Macon , GA 31202-1702
478-621-2728
Email: Randy.Aderhold@usdoj.gov

Col. Louis B. Wingate
**U. S. Army Human Resources Command-St. Louis**
**1 Reserve Way, St. Louis, MO 63132** .

Dr. Robert M. Gates, Secretary of Defense, by and through the Pentagon:
1000 Defense Pentagon  Washington, DC 20301-1000

Sheetul S. Wall U.S. Attorney's Office, Fax 706-649-7667
P.O. Box 2568 Columbus, Georgia 31902-2568
MAJOR REBECCA E. AUSPRUNG
Department of the Army
U.S. Army Litigation Division
901 North Stuart Street, Suite 400
Arlington, VA 22203-1837
Tele: 703-696-1614
Email: Rebecca.Ausprung@us.army.mil

President Barack Hussein Obama,
At
The White House
1600 Pennsylvania Avenue
Washington, D.C. 20500

by and through the Attorney General of the United States, Eric Holder, at

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

and Maxwell Wood, United States Attorney for the Middle District of Georgia, at

U.S. Attorney's Office  Gateway Plaza  300 Mulberry Street, 4th Floor Macon, Georgia 31201  Tel: (478) 752-3511

And also at:

Columbus Division   1246 First Avenue   SunTrust Building, 3rd Floor
 Columbus, Georgia 31901   Tel: (706) 649-7700.

**A. Brian Albritton**
**United States Attorney for the**
**Middle District of Florida**
**400 N. Tampa Street, Suite 3200**
**Tampa, Florida 33602**
**Phone: (813) 274-6000**
**Fax : (813) 274-6358**

*/s/ Orly Taitz, Esq.*
_____
Attorney Orly Taitz, Esquire, former attorney
        For the Plaintiff
        Captain Connie Rhodes, M.D. F.S.